Donald ROBINSON, Richard Hill, Charles M. Adams, James Wolfanger, Karl Rahn and Ronald Fregara, Plaintiffs-Appellees,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellant.

No. 93, Docket 85–7312.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1985.

Decided Nov. 18, 1985.

Richard Schoolman, New York City (Legal Dept. of Pan American World Airways, Inc., Andrew M. Upton, Patricia J. Langer, of counsel), for defendant-appellant.

Stephen G. Eisenberg, New York City (Bernstein & Arfa, of counsel), for plaintiffs-appellees.

Before FEINBERG, Chief Judge, KAUFMAN and MESKILL, Circuit Judges.

FEINBERG, Chief Judge.

The sole issue in this interlocutory appeal from an order of the United States District Court for the Southern District of New York, Robert W. Sweet, J., is whether, in light of *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the six-month limitations period of section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), should be "borrowed" to apply to a suit alleging discharge for pro-union activities, brought under section 2, Fourth of the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. The district judge answered the question in the negative, and denied defendant Pan Am's motion to dismiss plaintiffs' complaint as untimely. The district judge certified, however, that his decision involved a controlling and unresolved question of law, appro-

priate for interlocutory review under 28 U.S.C. § 1292(b), and this court subsequently granted Pan Am leave to appeal. We now reverse the district court decision on this issue, and remand for consideration of whether Pan Am is estopped from relying on the six-month statute of limitations.

## I.

The factual background of this dispute is described fully in two opinions of the district court, reported at 606 F.Supp. 279 and 597 F.Supp. 1063, and we will not repeat it here. For our purposes it suffices to state that plaintiffs Donald Robinson, Richard Hill, Charles M. Adams, James Wolfanger, Karl Rahn and Ronald Fregara are former Pan Am employees who allege they were terminated due to their pro-union activities, in violation of section 2, Fourth of the RLA, 45 U.S.C. § 152.[1] Five of the plaintiffs were dismissed in July 1981 (the sixth was terminated in February 1982), during a period when the National Mediation Board (NMB) was considering an application by the International Brotherhood of Teamsters to represent a unit of Pan Am employees that included most of the plaintiffs. The union's application was eventually dismissed, 9 NMB 229 (1982), and plaintiffs thereafter sought redress for their terminations by bringing this lawsuit. All the plaintiffs but one also allege that Pan Am violated its own personnel policies by failing to render decisions on grievances filed shortly after their dismissals.

Plaintiffs filed suit in June 1984, and Pan Am moved to dismiss the complaint on grounds of untimeliness.[2] Pan Am argued that, in the absence of a statutorily-mandated limitations period for claims based on section 2, Fourth, the court should borrow the six-month period of section 10(b) of the NLRA rather than the three-year period of New York C.P.L.R. § 214(2), which applies to a liability based upon a statute.[3] According to Pan Am, this result is compelled by *DelCostello*, in which the Supreme Court applied the six-month period of section 10(b) to duty of fair representation suits brought by employees against their employers and their unions. Acknowledging a "family resemblance" between unfair labor practice claims under the RLA and the NLRA, see *DelCostello*, 462 U.S. at 170, 103 S.Ct. at 2293, the district court nonetheless found this insufficient reason to extend *DelCostello* to this RLA suit. The court reasoned that application of the state limitations period here does not conflict with any important federal policies, and prejudices neither employer nor employee. 606 F.Supp. 279; 597 F.Supp. at 1068–69. For the reasons stated below, we disagree.

## II.

The Railway Labor Act establishes a scheme for resolution of labor disputes in the rail and air transportation industries.[4] Section 2, Fourth of the RLA prohibits

---

**1.** Section 2, Fourth provides, in relevant part:

Employees shall have the right to organize collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization....

**2.** Pan Am also sought dismissal on the ground that none of the plaintiffs were "employees" under the RLA. Judge Sweet granted the motion as to Hill only, but denied it as to the others in light of an unresolved question of fact relevant to their status. This issue is not before us.

**3.** C.P.L.R. § 214(2) provides for commencement within three years of "an action to recover upon a liability, penalty or forfeiture created or imposed by statute ...."

**4.** The RLA, passed originally in 1926, was amended in 1936 to apply to interstate air carriers. See 45 U.S.C. § 181.

employers from interfering with the rights of employees to unionize; section 2, Ninth authorizes the NMB to investigate representational disputes and hold elections; and section 2, Sixth mandates procedures for speedy resolution of contract disputes. Unlike the NLRA, however, the RLA does not establish any administrative mechanism for considering unfair labor practice charges brought by individual employees. Although section 2, Tenth authorizes the government to seek criminal sanctions against an employer who willfully violates certain sections of the RLA, including section 2, Fourth, this drastic enforcement mechanism has rarely been used. See *United States v. Winston*, 558 F.2d 105, 108 (2d Cir.1977); 10 T. Kheel, Labor Law § 50.07[2], 50–51 to 52 (1985). Rather, courts have inferred a private right of action by employees and permitted direct suit in federal court. *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 924–27 (1st Cir.1983). The appropriate limitations period for such claims, however, is not settled, and the RLA provides no specific guidance.

When a federal statute fails to specify a limitations period within which federal claims may be brought, the courts usually borrow the most analogous period under state law. *DelCostello*, 462 U.S. at 158, 103 S.Ct. at 2287; *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–05, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966). The selection of a limitations period is an exercise of the court's discretionary power to fashion appropriate measures to carry out the intent of the federal legislation. *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Where the state procedural rule conflicts with the substantive purposes of the federal cause of action, however, courts have not hesitated to deviate from this rule of thumb. See, e.g., *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) (state limitations period rejected for Title VII claim brought by EEOC).

In *DelCostello*, the Court sought an appropriate limitations period for a duty of fair representation claim, which is a hybrid action because it combines an employee's contract claim against an employer under section 301 of the Labor Management Relations Act with the employee's claim against the union under the NLRA for inadequate representation, frequently in connection with the union's handling of a grievance or arbitration proceeding. The Court rejected several proposed state limitations periods in favor of one borrowed from federal labor law that it considered more consonant with the remedial purposes of the cause of action. The Court found the usual 30 to 90-day time frames for vacating arbitration awards too short "to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights," *id*. 462 U.S. at 166, 103 S.Ct. at 2291, and malpractice limitations periods, varying from three to ten years, too long to serve the "relatively rapid final resolution of labor disputes favored by federal law," *id*. at 168, 103 S.Ct. at 2292. The Court borrowed, instead, the six-month period of section 10(b) of the NLRA, stating that

> when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

*Id*. at 172, 103 S.Ct. at 2294. The Court also noted the "family resemblance" between claims for breach of the duty of fair representation and other unfair labor practices, *id*. at 170, 103 S.Ct. at 2293, and the fact that the section 10(b) period was "actually designed to accommodate a balance of interests very similar to that at stake" in the hybrid section 301/fair representation suit, *id*. at 169, 103 S.Ct. at 2293.

*DelCostello* did not, however, create an all-embracing new rule. In language relied upon heavily by plaintiffs here and by the district court, the Court stated:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations

periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.... On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing limitations periods.

*Id.* at 171, 103 S.Ct. at 2294.

Despite this caveat, Pan Am contends, and we agree, that the same considerations that led the Court to apply section 10(b) to fair representation suits are involved in claims under section 2, Fourth of the RLA. Section 214(2) of the New York C.P.L.R. is only marginally analogous, and its use fails to serve two key policy goals of the RLA—speed and uniformity. As to the former, it is undisputed that federal labor policy strongly favors prompt resolution of disputes. *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292; *Local Union 1397 v. United Steelworkers*, 748 F.2d 180, 182 (3d Cir. 1984). Indeed, the RLA focuses repeatedly on this objective. Its legislative history reflects Congress' interest in preventing the disruption caused by prolonged labor disputes in the transportation industry. See, e.g., 67 Cong.Rec. 4499, 4503–05 (1926), reprinted in Legislative History of the Railway Labor Act, As Amended (1926 through 1966) 162, 170–72 (1974). The Act's original subtitle described it as providing "for the prompt disposition of disputes between carriers and their employees, and for other purposes." Id. at 3. Other sections of the RLA specify very definite (and short) time periods in which steps must be taken. For example, section 2, Ninth allows 30 days for the NMB to respond to notice of a representation dispute, and section 2, Sixth requires a carrier or union to respond to the other's request for a grievance conference within 10 days. This concern for speed certainly reflects a desire that labor disputes not linger unresolved for too long.

Plaintiffs argue that section 10(b)'s six-month limitations period is too short, and runs counter to the reasoning of *DelCostello*, which sought to protect employees from overly restrictive state time limitations, *id.* 462 U.S. at 166, 103 S.Ct. at 2291. It is true that Congress designed 10(b) for a far simpler procedure—the filing of an unfair labor practice charge with the National Labor Relations Board (NLRB)—and it is arguable that borrowing the section 10(b) period for claims under the RLA is therefore unfair and impractical. However, even though obtaining relief through a federal lawsuit is more onerous than filing a charge with the NLRB, we do not agree that six months is too little time. A hybrid section 301/fair representation suit involves, as already indicated, two different causes of action against two separate parties, and the plaintiff must prevail in both to win. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 196–97, 87 S.Ct. 903, 920–21, 17 L.Ed.2d 842 (1967). That is surely a more complex action than a claim under the RLA, section 2, Fourth. Yet, in *DelCostello* the Court weighed several proposed time frames and found the time frame of section 10(b) sufficient in light of "the federal policies at stake and the practicalities of litigation." 462 U.S. at 172, 103 S.Ct. at 2294. A six-month limitations period does not seem "inherently unfair" to the plaintiffs here. See *Local Union 1397*, supra, 748 F.2d at 184. The unlawful activity alleged in the complaint "is rarely latent; generally ... rights are denied openly" so that "six months is an adequate time period in which to decide whether to bring" an action. *Id.*

Moreover, borrowing section 214(2) for claims of wrongful discharge under the RLA conflicts with the federal labor policy of uniformity, since use of a state period of limitations permits employees with identical claims to be subject to widely disparate time bars depending on where they sue. Putting aside the forum-shopping problem, this lack of uniformity in an industry composed largely of interstate employers is

sufficient justification alone to question the wisdom of borrowing varying state rules. Pan Am asserts that bargaining units in the airline industry may only be certified for "crafts" or "classes" and that these are typically multi-state. While this is not always so, see *Ground Services, Inc.*, 8 NMB 112 (1980) (system-wide class may include only one city), a multi-state unit in the aviation industry is certainly more likely than not. Furthermore, plaintiffs do not dispute Pan Am's contention that they sought union representation in this case for a bargaining unit of employees in three states.

■ We agree with Pan Am that extension of the NLRA section 10(b) period to similar claims under the RLA would serve the goal of uniformity. The Supreme Court recently emphasized that the "importance of uniformity in the labor law field" was a significant factor in the *DelCostello* decision, see *Burnett v. Grattan*, — U.S. —, 104 S.Ct. 2924, 2931 n. 14, 82 L.Ed.2d 36 (1984). Moreover, even those pre-*Del-Costello* cases that adopted state limitations periods, relied on by plaintiffs, expressly did so on the ground that the "[l]ack of uniformity [was] ... unlikely to frustrate in any important way the achievement of any significant goal of labor policy." *Hoosier, supra*, 383 U.S. at 702, 86 S.Ct. at 1111; *Santos v. District Council of New York City*, 619 F.2d 963, 968 (2d Cir.1980). Where an industry is national rather than local and there is a particular federal interest in speedy, orderly resolution of disputes, the application of conflicting state time periods interferes with the goal of the legislation and is inappropriate. See *Abernathy v. United States Postal Service*, 740 F.2d 612, 617 (8th Cir.1984) (federal interest in uniformity under Postal Reorganization Act requires application of section 10(b)).

It seems to us, moreover, that the time period of section 10(b) is a natural choice to apply here since the unfair labor practice allegedly committed in this case has its identical counterpart under the NLRA, to which section 10(b) applies. Cf. *Engel-*

*hardt v. Consolidated Rail Corp.*, 756 F.2d 1368, 1370 (2d Cir.1985) (applying 10(b) to fair representation claims under the RLA parallel to those under the NLRA); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984) (same). Historically, courts and administrative agencies have looked to the NLRA and caselaw under it for guidance in interpreting questions arising under the RLA. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969); *Trans International Airlines v. International Brotherhood of Teamsters*, 650 F.2d 949, 959 (9th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); *Pan American World Airways v. International Brotherhood of Teamsters*, 275 F.Supp. 986, 997–98 (S.D.N.Y.1967), *aff'd*, 404 F.2d 938 (2d Cir.1969).

Certainly, *DelCostello* need not be narrowly construed to apply only to nearly identical claims or to hybrid ones, see 462 U.S. at 158 n. 12, 103 S.Ct. at 2287 n. 12. Indeed, since that case was decided its reasoning has been applied to a variety of statutory, non-hybrid labor claims for which Congress did not specify a limitations period. Two courts recently applied the six-month period of section 10(b) to claims arising under section 2 of the RLA that would be unfair labor practices under the NLRA. *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Railway Co.*, 768 F.2d 914, 919 (7th Cir.1985) (refusal to bargain claim under RLA section 2, First); *Atkins v. Zantop International Airlines*, 18 Av.Cas. (CCH) ¶ 18,290 (E.D.Mich., Aug. 28, 1984) (wrongful discharge claim under section 2, Fourth). The section 10(b) time period has also been borrowed for duty of fair representation suits under the RLA, see, e.g., *United Independent Flight Officers v. United Air Lines*, 756 F.2d 1262 (7th Cir.1985); *Engelhardt v. Consolidated Rail Corp., supra*; *Welyczko v. U.S. Air, supra*; *Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188 (3d Cir. 1984), and for claims under the Labor-Management Reporting and Disclosure Act, 29

U.S.C. § 401 et seq. See, e.g., *Vallone v. Local Union No. 705,* 755 F.2d 520 (7th Cir. 1985); *Local Union 1397 v. United Steelworkers of America,* supra; *Linder v. Berge,* 739 F.2d 686 (1st Cir.1984).

This is not to say that the caveat in *DelCostello* that "federal courts should [not] eschew use of state limitations periods," 462 U.S. at 171, 103 S.Ct. at 2294, has been ignored, or that section 10(b) should apply to all labor-related matters. In *Monarch Long Beach Corp. v. Soft Drink Workers Local 812,* 762 F.2d 228 (2d Cir. 1985), we refused to extend *DelCostello* to a secondary boycott damage suit that did not implicate the policy concerns present here—" 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes under it.' " *Monarch,* supra, 762 F.2d at 231 (quoting *DelCostello,* 462 U.S. at 162–63, 103 S.Ct. at 2289–90). Plaintiffs assert that this suit also does not involve those considerations, since no union is formally in this case and no collective bargaining agreement covers them. But as we noted in *Monarch,* 762 F.2d at 231, the key question is whether the dispute arises out of a labor-management relationship in which uniform and speedy settlement is highly desirable. Whether or not the union prevailed before the NMB is in that sense not significant. Federal labor law policy protects more than established collective bargaining relationships; it also protects the process whereby such relationships are established. We realize that applying the teaching of *DelCostello* is not simple, and should certainly not be mechanical. Thus, in *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985), we found section 10(b) inapplicable in a case involving a pure breach of contract pension claim, which did not raise concerns integral to the formation and maintenance of the collective bargaining relationship. Cf. *Smith v. Kerrville Bus Co.,* 748 F.2d 1049 (5th Cir.1984). But whatever the difficulty

of applying *DelCostello* in other situations, discharge of pro-union employees at a time when a union is attempting to organize and represent the employees is the typical labor dispute raising the labor-management concerns referred to above.

■ In sum, applying the *DelCostello* analysis, we conclude that the appropriate limitations period for the claims in this case under the Railway Labor Act, Section 2, Fourth, should be the same as the six-month period of section 10(b) of the NLRA.

### III.

Plaintiffs argue that if we apply the six-month limitations period of section 10(b) to this lawsuit, Pan Am should in any event be equitably estopped from asserting this defense since it failed to abide by its own personnel policies in handling plaintiffs' grievances. According to plaintiffs, the company personnel manual requires the Management Appeals Board to issue a decision on a grievance hearing within 30 days. That decision must then be ruled upon within seven days by the Vice President for Personnel. Plaintiffs assert that no final decisions had been rendered on their grievances as of the date this appeal was argued. Plaintiffs contend that the promulgation, dissemination and implementation of these company grievance procedures induced a reasonable belief on their part that their wrongful discharges would be rectified by an impartial grievance system, and that they relied to their detriment on this belief. They also note that Pan Am's behavior in this matter makes its arguments in favor of speedy handling of labor disputes disingenuous.

Pan Am does not dispute plaintiffs' characterization of its personnel manual, nor the allegation that it has yet to rule on plaintiffs' grievances, which are now over four years old. Pan Am asserts, however, that the failure to act on an internal grievance does not meet the standard in this circuit for equitable tolling, *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978). More fundamental-

ly, Pan Am also claims that the district court decided this issue adversely to plaintiffs when the court characterized the certified statute of limitations question as "dispositive." Pan Am says that plaintiffs did not take a cross-appeal on the estoppel issue when Pan Am appealed, and therefore may not raise it now. On the record before us, it does not appear that Pan Am is correct on this point. There was no need for the judge to rule on the estoppel issue because plaintiffs were successful on the statute of limitations question. In addition, we would expect a decision against plaintiffs on this point to be accompanied by some discussion of the facts or statement of the relevant law. In any event, we remand the case to the district court to deal with the issue in the first instance.

We reverse on the question certified to us, and remand for further proceedings consistent with this opinion.