933 F.2d 1100
 137 L.R.R.M. (BNA) 2534, 118 Lab.Cas. P 10,750
 Zlatko GVOZDENOVIC; Margarita Walinski; Patricia Cargould;
Frank Perea, Individually and on behalf of that class of
1202 former Pan Am Flight Attendants now Employed by United
Airlines, Inc., and as members of the Pan Am Seniority
Arbitration Committee, Plaintiffs-Appellants,
v.
UNITED AIR LINES, INC.; Stephen Wolf, its President; The
Association of Flight Attendants, AFL-CIO, and its
President; Susan Bianchi-Sand; Au Rodney; Pamela
Greenleaf, As members of the United Airlines Seniority
Arbitration Committee; Patricia Friend, Chairperson of the
United Airlines Master Executive Council; United
Preacquisition Flight Attendants, Defendants-Appellees.
 No. 1092, Docket 90-7886.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1991.
Decided May 22, 1991.
 
 John F. Henning, Jr., San Francisco, Cal. (Henning, Walsh & King, San Francisco, Cal., Scott H. Robb, Robb & Henning, New York City, of counsel), for plaintiffs-appellants.
 Stephen B. Moldof, New York City (Michael L. Winston, Cohen, Weiss & Simon, New York City, of counsel), for defendants-appellees Ass'n of Flight Attendants, Susan Bianchi-Sand, Patricia Friend, and the "Pre-Acquistion United Airlines Flight Attendants".
 Eric Rosenfeld, New York City (Maurice L. Miller, Seyfarth, Shaw, Fairweather & Geraldson, New York City, of counsel), for defendants-appellees United Airlines, Inc. and Stephen Wolf.
 Before FEINBERG, MINER and MAHONEY, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants appeal from a judgment entered on August 29, 1990 in the United States District Court for the Southern District of New York (Griesa, J.), dismissing a class action suit brought against defendants-appellees United Airlines, Inc. ("United") and the Association of Flight Attendants ("AFA"), asserted under the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151 et seq. (1988), the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. Secs. 411, 412 (1988) and provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. Secs. 10, 11 (1988). In the complaint, appellants sought to vacate an arbitral award and sought damages, based on alleged breach of the statutory duty of fair representation, enforcement of compulsory union membership, improper dues assessment and breach of contract by appellees.
 
 
 2
 Appellants are 1202 former flight attendants of Pan American World Airways, Inc. ("Pan Am"), who began working for United after United purchased Pan Am's Pacific Division, in which they had been employed. On appeal, they contend that the district court improperly dismissed their petition for vacatur of the arbitration award because they were not parties to the agreement providing for the arbitration and because certain conduct of the AFA during the arbitration violated its duty to represent all its members fairly. Appellants also argue that the district court improperly dismissed on statute of limitations grounds their claims that the AFA ran an illegal "closed shop" and unlawfully raised their union dues, and that United improperly had given financial assistance to incumbent United employees to engage in the arbitration.
 
 
 3
 We hold that, because appellants participated voluntarily and actively in the arbitration process, they are bound by its outcome and the district court therefore properly dismissed their petition to vacate the award. We also hold that appellants' claims of breach of the AFA's duty of fair representation, impermissible enforcement of compulsory union membership and improper financial assistance by United are time-barred. With regard to the unlawful dues increase claim, we hold that, under Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), appellants are not barred by the applicable statute of limitations from presenting this claim, but that it fails on its merits. Accordingly, we affirm the judgment of the district court.
 
 BACKGROUND
 
 4
 On April 22, 1985, United entered into an agreement with Pan Am under which it would acquire the routes and related assets of Pan Am's Pacific Division. As part of the acquisition agreement, United promised to hire at least 1202 of the Pan Am Pacific Division flight attendants and, "[s]ubject to agreement ... with the collective bargaining representatives of Buyer's employees, ... [to] give [the incoming flight attendants] full recognition to all periods of service with" Pan Am.
 
 
 5
 On August 1, 1985, United and the AFA, the collective bargaining representative for United employees, began negotiations over a new collective bargaining agreement. An important issue to be resolved in the negotiations was the method of determining the seniority status of the 1202 incoming flight attendants in relation to that of United's pre-acquisition flight attendants. On December 6, 1985, representatives of United and the AFA entered into a Letter of Agreement setting out the terms and conditions of employment for the incoming flight attendants. The Letter of Agreement, ultimately incorporated into the collective bargaining agreement, was ratified by the AFA's members on March 14, 1986. The Letter of Agreement provided that the new employees would become AFA members on the date they commenced work with United and that the issue of their seniority status would be determined through arbitration in which the incoming flight attendants and the incumbent United flight attendants would be the only participants. The arbitration was to be financed largely by United. The Letter of Agreement also provided that "the arbitrator shall determine the appropriate method of integration, based upon equitable and contractual considerations. In making this or any other determination, the arbitrator shall ... not reduce the seniority accrued by any United flight attendant."
 
 
 6
 On three successive dates, December 6, 1985, January 8 and 24, 1986, Pan Am Pacific Division flight attendants were notified in conditional offers of employment sent to them by United that their seniority rights were to be determined through this process. Pan Am's Pacific Division employees were guaranteed continued employment under their collective bargaining agreement with Pan Am and were under no compulsion to transfer to United. On February 11, 1986, the 1202 Pan Am flight attendants who had accepted United's offer of employment became flight attendants for United.
 
 
 7
 On March 7, 1986, United deposited $132,700 into each of the bank accounts it had opened for the 1202 incoming flight attendants and the incumbent United employees to cover their costs of arbitration. Both sides drew on their respective accounts for this purpose. The Independent Union of Flight Attendants ("IUFA"), which had represented the incoming flight attendants during their employment at Pan Am, selected a committee of five to represent the former Pan Am attendants in the arbitration. Similarly, the United Master Executive Council ("UMEC"), the AFA's representative body at United, created a five-member committee to represent the incumbent United flight attendants. Each committee chose legal counsel, who in turn selected Arthur Stark to act as arbitrator.
 
 
 8
 The first arbitration hearing was held on June 27, 1986. The incumbent flight attendants argued that the seniority of the 1202 incoming flight attendants should be based on their date of hire by United, while the incoming flight attendants contended that they should receive full credit for their entire term of employment with Pan Am. In an interim decision issued on September 8, 1986, Arbitrator Stark decided that the new flight attendants would be integrated into the United seniority list. After additional hearings, he established in a final decision issued on September 26, 1987 an integration formula entitling them to partial credit for their service at Pan Am. Specifically, under Stark's formula, the first 1500 most senior employees on the integrated seniority list would be the first 1500 on the existing United list; thereafter, one Pan Am transferring flight attendant would be inserted on the list of United flight attendants on the basis of a ratio of 1:7.47. United revised the seniority list accordingly.
 
 
 9
 On December 28, 1987, the four appellants named individually as plaintiffs in this suit commenced the action, seeking relief against the AFA only, and, on May 5, 1988, amended their complaint to add several causes of action and United as a defendant. In the amended complaint, appellants alleged six causes of action: two claims of breach by the AFA of its statutory duty of fair representation, as implied under RLA Sec. 2, 45 U.S.C. Sec. 152; the unlawful imposition of union membership in violation of RLA Sec. 2 (Eleventh)(b), 45 U.S.C. Sec. 152 (Eleventh)(b); the denial of equal rights under the AFA constitution in violation of LMRDA Sec. 101(a)(1), 29 U.S.C. Sec. 411(a)(1); and breach of the contract between the AFA and its members established by the union's constitution, and breach of the acquisition contract between United and Pan Am, in violation of New York contract law. In the amended complaint, appellants also moved to certify their suit under Fed.R.Civ.P. 23(b)(1)(A) and (B) as a class action, in which the interests of all 1202 former Pan Am flight attendants would be represented. Later, in briefs submitted to the district court, appellants raised the additional claim of improper financial assistance by United, in violation of RLA Sec. 2 (Fourth), 45 U.S.C. Sec. 152 (Fourth).
 
 
 10
 After discovery, each side moved for summary judgment or judgment on the pleadings. At a hearing on January 17, 1990, the district court denied the motions and directed trial on the claim of breach of duty of fair representation which, it believed, also was dispositive of the petition to vacate the arbitral award, the denial of equal rights claim and the breach of contract claim. A bench trial was held before Judge Griesa on March 29 and 30, 1990. On the latter date, he decided the issues of whether the Letter of Agreement was void and whether the inclusion in the Letter of Agreement of the provision that the arbitrator "could not reduce seniority accrued by any United flight attendant" constituted a violation of the AFA's duty to represent the 1202 fairly. Judge Griesa determined that the agreement was not void and that plaintiffs were bound by it because of their willing participation in the arbitration, and that the no-reduction provision did not prejudice the placement of the 1202 incoming flight attendants on United's seniority list. Judge Griesa then dismissed all claims relating to the duty of fair representation.
 
 
 11
 In an Opinion dated August 17, 1990, Judge Griesa dismissed the remaining claims of unlawful imposition of union membership and illegal financing, finding that they were barred by a six-month statute of limitations. In the opinion, Judge Griesa also formally confirmed the class status of the action.
 
 DISCUSSION
 I. Validity of Arbitration Award
 
 12
 Appellants contend that the Letter of Agreement, in which United and the AFA agreed to submit the seniority issue to arbitration, is void because it was entered into before their employment with United effectively began. Because they were neither formal employees of United nor members of AFA at the time of the Letter of Agreement, appellants argue, they could not be parties to any arbitration agreement and are not bound by the arbitral outcome. See American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 677 (2d Cir.1974); Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299, 300-01 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).
 
 
 13
 Although a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct. See Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42 (3d Cir.1985); cf. Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 231 (2d Cir.1982) ("[i]t is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration."). Here, appellants' conduct manifested a clear intent to arbitrate the dispute. The record demonstrates their active and voluntary participation in the arbitration; for example, through the IUFA, they chose a committee to represent them in the arbitration, and, on their behalf, the committee withdrew funds from the bank account set up to cover its expenses, chose counsel to represent the transferring flight attendants in the arbitration and argued vigorously that they should receive full credit for their time of employment with Pan Am. Also, there is no evidence that, at any point before or during the arbitration, appellants objected to the process, refused to arbitrate or made any attempt to seek judicial relief.
 
 
 14
 Appellants' reliance on Saxis and Orion Shipping is misplaced because those cases involved commercial, not labor, arbitration. Under the RLA, terms and conditions of employment for unionized employees are established through collective bargaining between the employer and the union representative for the bargaining unit. 45 U.S.C. Sec. 152 (First) (duty of carriers and employees to settle disputes), (Fourth) (collective bargaining); see also Order of R.R. Telegraphers v. Chicago & N. Western Ry. Co., 362 U.S. 330, 339, 80 S.Ct. 761, 766, 4 L.Ed.2d 774 (1960); Virginian Ry. Co. v. System Fed'n No. 40, Ry. Employees Dep't of the Am. Fed'n of Labor, 300 U.S. 515, 547-48, 57 S.Ct. 592, 599-600, 81 L.Ed. 789 (1937). Unlike a standard commercial contract, a collective bargaining agreement binds both those members within a bargaining unit at the time the agreement is reached as well as those who later enter the unit. J.I. Case Co. v. NLRB, 321 U.S. 332, 335-36, 64 S.Ct. 576, 579-80, 88 L.Ed. 762 (1944); see Wood v. National Basketball Ass'n, 809 F.2d 954, 960 (2d Cir.1987); NLRB v. Laney & Duke Storage Warehouse Co., 369 F.2d 859, 866 (5th Cir.1966). Thus, the 1202 incoming flight attendants are bound by the collective bargaining agreement, including its arbitration provision, even though they were not involved in the negotiation preceding it or employed by United at the time of the negotiation. As the district court found, they were effectively third-party beneficiaries of the Letter of Agreement. See J.I. Case Co., 321 U.S. at 336, 64 S.Ct. at 579.
 
 
 15
 Similarly, appellants' reliance on Beardsly v. Chicago & N. Western Transp. Co., 850 F.2d 1255 (8th Cir.1988), cert. denied, 489 U.S. 1066, 109 S.Ct. 1340, 1341, 103 L.Ed.2d 810 (1989) is misplaced. Unlike Saxis and Orion Shipping, Beardsly implicated a labor arbitration. However, in Beardsly the agreement establishing the seniority status of employees who were hired by Chicago & Northwestern after it had purchased the railroad that employed them was reached without the involvement of the new hires, despite their repeated requests to participate and objections to the arbitration. Beardsly, 850 F.2d at 1262-63, 1269-70. By contrast, appellants here were permitted to participate and did so without objection.
 
 
 16
 Appellants also argue that the arbitrator's award should be vacated because, under 9 U.S.C. Sec. 10(a), it was reached through "fraud on the arbitration process." This contention is based on the fact that the AFA failed to inform either the 1202 incoming flight attendants or the arbitrator of an amendment to its constitution, proposed in November 1986 and formally ratified in June 1987, regarding its policy for seniority integration in a merger with an airline whose employees are not represented by the AFA. Under the amendment, seniority integration would "be accomplished by compiling an integrated seniority list in the same manner as provided for seniority integration between flight attendants on AFA carriers." New Section J.2., AFA Constitution, Rev. 87 (emphasis added). We reject appellants' contention. The adoption of the AFA amended merger policy was prospective in nature and expressly inapplicable to the United-Pan Am merger transaction.
 
 
 17
 Appellants' final argument for vacatur is that the AFA breached its duty to represent all of its members fairly, as required by the RLA. See Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Although the district court addressed this argument on its merits, the duty of fair representation claim may be dismissed as barred by the applicable statute of limitations, as the district court found with the more specific claims of violation of the RLA. In DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169-71, 103 S.Ct. 2281, 2293-94, 76 L.Ed.2d 476 (1983), the Court held that the six-month limitations period of the National Labor Relations Act applies to claims of breach of duty of fair representation. In this case, the period began to run, at the latest, as of the date the AFA ratified the allegedly violative agreement, March 14, 1986, by which time the 1202 incoming flight attendants already had begun working for United and were aware of the terms of the Letter of Agreement. See Local Lodge No. 1424, I.A.M. v. NLRB, 362 U.S. 411, 415-19, 80 S.Ct. 822, 825-28, 4 L.Ed.2d 832 (1960); United Indep. Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1262, 1273 (7th Cir.1985); Engelhardt v. Consolidated Rail Corp., 594 F.Supp. 1157, 1172 (N.D.N.Y.1984), aff'd, 756 F.2d 1368 (2d Cir.1985). The action was not commenced until December 28, 1987 and thus is time-barred.
 
 
 18
 Moreover, even on its merits, the argument must fail. As the exclusive bargaining representative of United flight attendants, the AFA has a duty under section 8(b) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b), to represent all of those employees, including the Pan Am transferees, both in collective bargaining with United and in enforcing the resultant collective bargaining agreement. See Air Line Pilots Ass'n v. O'Neill, --- U.S. ----, ----, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991); Vaca, 386 U.S. at 177, 87 S.Ct. at 909. "[T]he exclusive agent's statutory duty to represent all members of a designated [bargaining] unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177, 87 S.Ct. at 910; see also Air Wisconsin Pilots Protection Comm. v. Sanderson, 909 F.2d 213, 216 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 958, 112 L.Ed.2d 1045 (1991).
 
 
 19
 Review of the terms negotiated by a union to determine whether the union breached its duty of fair representation "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." O'Neill, --- U.S. at ----, 111 S.Ct. at 1135. A breach by the union exists only where it is established that the terms negotiated "can be fairly characterized as so far outside a 'wide range of reasonableness,' ... that [they are] wholly 'irrational' or 'arbitrary.' " Id. (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)).
 
 
 20
 It cannot be said that the decision of United and the AFA to allow an arbitrator to determine the competitive rights of the appellants was arbitrary, discriminatory, in bad faith, or wholly outside a wide range of reasonableness. The AFA was faced with two groups of its members with objectives that were directly at odds. Submission of the impending dispute to arbitration was an equitable and reasonable method of resolving it. Appellants fail to demonstrate that their interests were not fully represented in the arbitration proceeding. See Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 645 (2d Cir.1985), cert. denied, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986) (no violation of union's duty of fair representation where evidence demonstrated that all interests of all employee groups were represented vigorously throughout proceedings). We therefore agree with the district court's finding that the 1202 incoming flight attendants and the incumbent employees were treated under the arbitration agreement "with perfect parity."
 
 II. Appellants' remaining claims
 
 21
 Appellants allege that the mandate in the Letter of Agreement that they become members of the AFA immediately upon commencement of their employment violated RLA Sec. 2 (Eleventh)(a), which permits a carrier to agree with a union that all employees covered by a collective bargaining agreement will become union members within sixty days of beginning employment. They also contend that, because deductions from their paychecks for union dues began immediately upon hire, the AFA violated LMRDA Sec. 101(a)(3). Finally, they argue that the bank accounts opened by United constituted an illegal grant of financial assistance to the incumbent flight attendants, under RLA Sec. 2 (Fourth).
 
 
 22
 The district court found that the claims of denial of a 60-day grace period, illegal financial assistance and unlawful dues assessment were time-barred. With regard to the first two claims, we believe that the district court's decision was correct. The commencement of the suit on December 27, 1987 was more than six months after both the date on which appellants were required to become AFA members, February 11, 1986, and the date on which the Letter of Agreement was ratified, March 14, 1986. Thus, the six-month period in which appellants were required to protest any unlawful denial of a sixty-day grace period or unlawful financial assistance had lapsed. Cf. DelCostello, 462 U.S. at 172, 103 S.Ct. at 2294; Robinson v. Pan Am. World Airways, Inc., 777 F.2d 84, 87-89 (2d Cir.1985). Likewise, appellants' argument that continued hirings of former Pan Am flight attendants and withdrawals by the Pan Am arbitration committee from the finance account up until the time of the arbitration award bring the claims within the six-month statute of limitations is meritless. These claims do not allege "continuing" violations because any "vice in the enforcement of this agreement is manifestly not independent of the legality of its execution, as would be the case, for example, with an agreement invalid on its face or with one validly executed, but unlawfully administered." Local Lodge No. 1424, 362 U.S. at 423, 80 S.Ct. at 830.
 
 
 23
 With regard to appellants' claim under LMRDA Sec. 101(a)(3) of an illegal dues increase, we hold that Reed v. United Transp. Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), requires that we apply New York's three-year statute of limitations for personal injury actions, rather than "borrow" the six-month limitations period specified in the National Labor Relations Act, as the district court did. See Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union, 817 F.2d 967, 977 (2d Cir.1987). The district court erred in relying on Gordon v. Winpisinger, 630 F.Supp. 1276 (E.D.N.Y.1986) as authority for holding that appellants' claim was barred by the six-month statute of limitations, because Reed directly overrules the holding in that case.
 
 
 24
 The rationale of Reed --that a claim under Title I of the LMRDA does not directly challenge the stable relationship between the employer and the union, 488 U.S. at 331, 109 S.Ct. at 629, and therefore is not subject to the NLRA limitations period--applies to this case, in which appellants' Title I claim stems from an internal union dispute which has little direct, destabilizing effect on the relationship between United and the AFA. Although Reed involved a "free speech" claim under section 411(a)(2), which may be more clearly essential to the maintenance of union democracy than a claim under section 411(a)(3), "Title I claims all serve the core function of enhancing union democracy through enforcement of the rights of union members, not of protecting the integrity of collective bargaining or of grievance-and-arbitration procedures." Reed, 488 U.S. at 331 n. 6, 109 S.Ct. at 629 n. 6 (emphasis in original).
 
 
 25
 However, even though the section 411(a)(3) claim is not time-barred, we hold that it properly was dismissed. Besides the simple fact that appellants have produced little evidence of any illegal dues assessments or increases, the sixty-day grace period of the United-AFA collective bargaining agreement, upon which they base their "unlawful dues increase" claim, applies only to conventional, newly-hired employees, not to individuals hired laterally as a result of a merger. The section provides that "[n]ewly employed flight attendants" must apply for AFA membership within sixty days of commencing employment, and "shall be admitted to membership in the Union upon expiration of their probationary period as defined in ... the Agreement." During the probationary period, "the seniority provisions of [the collective bargaining agreement] do not apply to flight attendants unless retained in the service of the Company after the probationary period," and "[t]he service of flight attendants may be terminated at any time during the probationary period without a hearing." However, the Letter of Agreement excused the incoming flight attendants from having to undergo a probationary period, and gave them other unique employment benefits because of the circumstances under which they were hired. Thus, it seems clear that the incoming flight attendants were not "newly employed flight attendants" as defined in the collective bargaining agreement and were constrained to pay the AFA dues immediately upon commencing employment.
 
 CONCLUSION
 
 26
 We affirm the judgment of the district court dismissing appellants' complaint in its entirety.