275 F.3d 1165 (9th Cir. 2002)
 ELEANOR MCNAMARA-BLAD; KRISTEN ADAMS; MECHA ALLEN; AMANDA ALLGAIER; SHERRI AMES; AMBER ANDERSON; YVETTE ANKNER; RUTH ANOBA; RAMONA ARELLANO; SHAWN BAGNESHI; ELIZABETH BAILEY; CHANDRA BAKER; KIMBERLY BAKER; JEANNE BARRETT; CHRISTINA BAUER; KATIE BECKER; MISCHELLE BECKER; ANNETTE BENNETT; HELEN BENOIT; JANECE BERG; JEAN BIHLMEIER; CINDIE BLAKE; KYONG BLANCHETTE; LORI BUA; DIABOICE; KIM BOLDI; ERICA BOLLINGMO; TINA BONHOLZER; NATALIE BOWIE; ANTHONY BREWER; MANDY BROCE; LIZ BROCKELSBY; MICHELLE BROWN; MARGARET BRUNKAN; SUSAN BUCHOWICZ; SIMONE BURGEN; JILL BYFORD-BROWN; SHANNON CAIN; LETICIA CALERO; TRACY CAMPBELL; KELLIE CAMPBELL; LYNDA CANEPA; CRISTEN CARLENTINI; YVONNE CARMAZZI; ANDREA CHANDLER; MARINA CHERMASH; CATHY CHRISTMAN; THOMAS CONCEPCION; SANDRA CONRY; SHELLY CRAIG; JANET CUNNINGHAM; SHELLEY DANNELS; NADINE DAOANG; LORI DARIANO-RIVERA; DONNA DAVIS-SCHLIPP; SHANNON DECENA; KIMBERLY DEHARTY-ZILL; GWEN DEVENISH-SAVA; KATHLEEN DEVLIN; KATHLEEN DIMOND; WENDY DINAPOLI; PAMELA DOTTERER; DAWN DUMLER; REBECCA ESPINOSA; PATRICIA ETCHETO; SHARON FOWLER; ANGELA FURTADO; VANIA FURTADO; CHERYL GAESS; RAYLENE GARCIA; BERNIE GAZDOWICZ; DAVID GILMORE; STEPHANIE GOLD; JUTTA GORDLEY; TAMMY GREEN; TRACEE GREENE; TERRI
GRINSHAW-VANN; BRYAN GROVES; LETICIA OROZCO; LYNN HAMPSHIRE; KIMBERLI HARRIS; MARSHA HARRIS; CHRISTI HART; AMY HARTMAN; ANNIE HAUGE; REEJA HEAGY; JUDY HENDERSON; MARY HENDERSON; BARBARA HENSHAW; ERIN HERMANSON; STANA HERNING; ROSEMARY HILL; LYNDA HINCKLEY; EILEEN HIVELY; TANYA HOGG; JOANN HOLIDAY; DANNIELLE HOOPER; NICOLE HUTTER; SHELLIE HULL; SOFIA HUSSEIN; NORMA IVERSON; CHRISTOPHER J. DANLEY; PHYLLIS JACOBS; JAMIE JANES; RACHEL JOHNSON; BEVERLEY JONES; WAYNE KALANI; SUZANNE KEITH; ERIN KEITH; LANI KELLY; DIANNA KENDALL; MARK KESZLER; ROBBYN KETTNER; VICTORIA KING; ANNIE KNOWLES; MARI KOLB; STACEY LAMBERT; SHERYL LANE; JAN LARSON; CYNTHIA LAWRY-AMONG; LISA LEANOS; DAWNETTE LEAR; DAMON LEE; MICHELE LINDEN; MARIA LLAMAS; URANIA LLOYD; GINA LUCHETTI; GINA MACAPAGAL; KAREN MADDING; MIMIE MARDIROSIAN; JASON MANUPELLA; MAGDALENO MARRUFO; DIANE MARTIN; SARA MASELLI; RHONDA MASON; MIRIAM MCCARTHY; JACKIE MCCLAIN; SUZANNE MCCOMSEY; DEMETRIAS MCCOLLUM; STEPHAN MCDONALD; LYNN MCREE; PAULA MCSHANE; ROCHELLE MELLO-WASSON; KANDY MILL; KELLEY MINER; JENNE MONCADO; ROBERT MORELOS; TIFFANY MORRIS; ERIKA MUNOZ; ROBIN MYERS; JODIE MYERS; NICOLE NEESER; AMY NELSON; ED NESS; JANE NEWMAN; PHUONG NGUYEN; MARIA NUNO; EDILMA NYMAN-BALAN; BROOKE OFTEDAL; JUDY ORR; CARRIE PAKOSTA; NINA PAPPAS; SUE PAVELKA; RACHEL PENNINGTON; RAY PEPI; MAJBRIT PEREZ; CYNTHIA PERKINS; PATTY PONTILLO; DIANE POOLE; LESLIE PREKOP; GAYLA PRICE; JOHN RANNEY; TRACIE REDEN; JENNIFER REGESKI; LESLIE REYNOLDS; BRANDI REYNOLDS; TAMARA RIEBE; JOHN RICKETTS; STACY RISSONE; SHARLA ROBERTS; WILLIAM ROSA; EURYDICE ROSS; KATHERINE ROSS; DAVID ROW; CONNIE RUARK; KAREN RYAN; MARY SCHAPER; MARGUERITE SCHMITZ; TIM SCHWARTZ; DEBBIE SCOTT; JENNIFER SCOTT; MARIE SHAW; ALIDA SHEPPARD; SALA SHERWOOD; NORA SIWAJIAN; MICHELLE SMALL; DIANE SMITH; SARAH SMITH; LARISA SMITH; JULIE SOTO; JOHN SPARLING; SANDRA SPENCE; LYNN STEMPER; JACKIE STEWART; TERESA STULTZ; KIMBERLY STOVALL; PAMELA STRAND-LEE; CLAUDINA STRANGE; CAROL STRONG; RACHEL STRZELECKI; VICKI SWEEDEN; DONNA TETSELL; URSULA TETSELL; CHERIE THOMPSON; TRISH TOOHOY; SERAFIN TORRES; JANNIFFER TUCKER; BERYL TURCICH; LAURA TUTTLE; MARIA URIARTE; KELLIE VAN DUZER; MARDI-JAI WAIT; CINDY WALKER; KENISHE WARD; CARRIE WATHKE; RENEE WHITTON; TINA WILCZYNSKI; KAREN WILLOUGHBY; JODY WOODWARD; SHANICE YAMAMOTO; KELLY YBARRA; ROXANA YOUNG, PLAINTIFFS-APPELLANTS,
v.
THE ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, DEFENDANT-APPELLEE.
 No. 00-15846
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 19, 2001
Filed Jan. 11, 2002
 
 [Copyrighted Material Omitted]
 Alan R. Berkowitz, McCutchen, Doyle, Brown & Enersen, Llp, San Francisco, California, for the plaintiffs-appellants. Jeremiah A. Collins, Bredhoff & Kaiser, Pllc, Washington, District of Columbia, for the defendant-appellee.
 Appeal from the United States District Court for the Northern District of California Charles R. Breyer, District Judge, Presiding D.C. No. CV-99-04831-CRB
 Before: Robert R. Beezer, Stephen S. Trott and Richard C. Tallman, Circuit Judges.
 
 Beezer, Circuit Judge
 
 1
 This case involves a claim for breach of the duty of fair representation made under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. Appellants, former flight attendants of Reno Airlines ("Reno"), argue that the union representing American Airlines ("American") flight attendants had the duty to fairly represent the Reno flight attendants before the operational merger between the two airlines was complete. The district court dismissed for failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, and we affirm.
 
 I.
 
 2
 In late 1998, American purchased 80% of Reno's outstanding shares and announced it would merge the operations of the two airlines. The Association of Professional Flight Attendants ("APFA") represented the American flight attendants; the International Brotherhood of Teamsters ("Teamsters") represented the Reno flight attendants. Soon after the share purchase, the APFA began negotiations with American to determine where the Reno flight attendants would be placed on the combined seniority list after the operational merger. Sometime before August 31, 1999, American agreed to place all Reno flight attendants at the bottom of the combined seniority list.
 
 
 3
 On August 31, 1999, American merged the flight operations and flight attendant groups of Reno and American. The company implemented the seniority agreement reached with the APFA and placed all former Reno attendants at the bottom of the seniority list. The Reno flight attendants sued the APFA alleging breach of the duty of fair representation under the RLA. The district court granted defendant's FRCP 12(b)(6) motion to dismiss, holding as a matter of law that plaintiffs were not in the APFA's bargaining unit and that the APFA was not required to fairly represent them. This appeal followed.
 
 II.
 
 4
 We review de novo a dismissal pursuant to FRCP 12(b)(6) for failure to state a claim. Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.), cert. denied, 531 U.S. 929 (2000). We take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000). We will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Williamson, 208 F.3d at 1149.
 
 III.
 
 5
 The duty of fair representation arises from a union's statutory role as the exclusive bargaining representative for a unit of employees. Vaca v. Sipes, 386 U.S. 171, 177 (1967). Under the RLA, employees subordinate their interests to the collective interest of all employees in the bargaining unit, so that the union representing that unit may achieve a better collective bargain with the employer than each employee could obtain alone. See id. at 182. In ceding their interests to the union, the employees forego some individual rights against the employer. See id. The duty of fair representation was created as a check on the union "to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." Id. "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Id. at 177.
 
 
 6
 The scope of the duty of fair representation is generally coextensive with the scope of the union's statutory authority as the exclusive bargaining agent. "A union's duty of fair reppresentation . . . does not extend to persons who are not employees in the bargaining unit." Karo v. San Diego Symphony Orchestra Ass'n, 762 F.2d 819, 821 (9th Cir. 1985). Conversely, "[a] labor organization that is not the exclusive representative of a bargaining unit . . . owes no duty of fair representation to the members of the unit." Dycus v. NLRB, 615 F.2d 820, 827 (9th Cir. 1980).
 
 
 7
 The APFA was not the exclusive bargaining agent for the Reno flight attendants when it negotiated the seniority agreement with American. The workforces of two merging carriers become a single bargaining unit only when the carriers become a "single carrier." Airtran Airways/Airtran Airlines, 25 N.M.B. 429, 430, 437 (1998);[1] see also Bernard v. Air Line Pilots Ass'n, 873 F.2d 213, 218 (9th Cir. 1989) (holding that duty of fair representation attaches when workforces merge). American and Reno did not become a"single carrier" for representational purposes until August 31, 1999, American Airlines/Reno Air, 26 N.M.B. 467, 479 (1999), after the seniority agreement between the APFA and American was reached.
 
 IV.
 
 8
 Despite the fact that they were not in the APFA's statutory bargaining unit before the merger, the Reno flight attendants contend that the APFA nonetheless had the duty to fairly represent them at that time. The Reno flight attendants' arguments in support of this contention are unavailing.
 
 A.
 
 9
 The Reno flight attendants first argue that they were "de facto" members of the APFA bargaining unit, citing Jones v. Trans World Airlines, Inc., 495 F.2d 790 (2d Cir. 1974). We disagree.
 
 
 10
 Jones involved two separate classes of Trans World Airlines employees, guards and passenger relations agents, who performed many of the same functions. Id. at 793-94. Only the guards were represented by a union. Id. Relying on findings that the union "insist[ed] that the passenger relations agent jobs were in the guard unit" and that the passenger relations agents "had performed guard duties all along," the court held that the passenger relations agents were members of the guard bargaining unit. Id. at 797. The court concluded that the union breached its duty of fair representation by discriminating against the passenger relations agents based on their non-union status. Id. at 798. "Jones thus stands for the limited and undisputed proposition that discrimination against non[union]-member employees who are part of the bargaining unit is impermissibly arbitrary if no relevant distinctions exist between the union and non-union employees. " Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1016 (3d Cir. 1977) (emphasis added).
 
 
 11
 No allegations support the inference that the Reno flight attendants were de facto members of the American bargaining unit before the merger. The APFA did not insist that it was the exclusive bargaining representative for the Reno flight attendants. Although the pre-merger duties performed by the Reno flight attendants are commensurate with membership in a flight attendant bargaining unit, they are not commensurate with membership in the American flight attendant bargaining unit. For example, the Reno flight attendants wore Reno uniforms and worked on Reno flights; they did not wear American uniforms or work on American flights. Before the operational merger, the Reno flight attendants belonged to the bargaining unit consisting of flight attendants employed by Reno Airlines and represented by the Teamsters. They could not simultaneously be "de facto" members of another bargaining unit consisting of employees employed by a different airline and represented by a different union.
 
 B.
 
 12
 The Reno flight attendants next argue that "by undertaking the responsibility to represent" them before the merger, the APFA obligated itself to represent them fairly. Other circuits have held that where a union holds itself out to persons as their exclusive bargaining agent with the intent and effect of inducing reliance, the union must represent those persons fairly in any negotiations it undertakes on their behalf. See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 833 (1st Cir. 1997); Chavez v. United Food & Commercial Workers Int'l Union, 779 F.2d 1353, 1357 (8th Cir. 1985).
 
 
 13
 We need not address the legal merits of this theory of detrimental reliance, for the Reno flight attendants do not allege facts sufficient to support its invocation here. To succeed on the theory in other circuits, plaintiffs must show that the union held itself out to the plaintiffs to be their exclusive bargaining agent and that the plaintiffs relied upon that purported representation. Chavez, 779 F.2d at 1357. Although the complaint arguably alleges that the APFA held itself out to American as the Reno flight attendants' exclusive bargaining agent, it does not allege that the APFA held itself out to the Reno flight attendants as their exclusive agent or that the Reno flight attendants relied upon such representations. To the contrary, the complaint admits that the Teamsters was the Reno flight attendants' exclusive bargaining agent before the merger.
 
 C.
 
 14
 The Reno flight attendants also argue that even if they were not de facto members of the APFA's bargaining unit at the time of the seniority negotiations and the APFA did not induce them to rely on its purported exclusive bargaining status, the APFA nonetheless owed them a duty of fair representation before the merger. The Reno flight attendants argue that Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768 (1952), requires unions to fairly represent members of other bargaining units that will soon be operationally merged into the union's own unit. We do not read Howard to support this contention.
 
 
 15
 In Howard, the Supreme Court held that a union may breach its duty of fair representation when it racially discriminates against black employees not within its statutory bargaining unit. Id. at 774-75. The St. Louis-San Francisco Railway Company maintained two racially segregated classes of workers, white brakemen and black porters, who performed substantially the same duties. Id. at 770-71. The union representing the brakemen negotiated a provision in its collective bargaining agreement that prohibited the railroad from using porters to perform brakeman duties. Id. at 771. The railroad thereafter abolished the porter position and hired white brakemen to fill the vacancies. Id.
 
 
 16
 The Howard Court, noting that the porters were "threatened with loss of their jobs because they [we]re not white and for no other reason," id. at 773, explained that the RLA "prohibits bargaining agents it authorizes from using their position and power to destroy colored workers' jobs in order to bestow them on white workers." Id. at 774. The Court held that the brakemen's union had the duty to fairly represent the porters even though they were not within the union's statutory bargaining unit. Id.
 
 
 17
 The Supreme Court later clarified the holding of Howard in dictum. In Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971), the Court held that retirees are not "employees" under the National Labor Relations Act ("NLRA") and are not protected by the mandatory bargaining provisions of the NLRA. Id. at 172. The Court also said that "[s]ince retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer." Id. at 181 n.20. The court resolved the tension between this statement and the holding in Howard by noting that although"[t]he reach and rationale of Howard are a matter of some conjecture . . . [Howard] obviously does not require a union affirmatively to represent non-bargaining unit members or to take into account their interests in making bona fide economic decisions in behalf of those whom it does represent." Id. ; see also Karo, 762 F.2d at 821 (applying Pittsburgh Plate Glass to hold that union owes no duty of fair representation to person"who never was a member of the unit").
 
 
 18
 Prior to the merger, the Reno flight attendants were not in the American bargaining unit for which the APFA was the statutory bargaining agent. The APFA had no statutory duty to fairly represent appellants when it negotiated the seniority agreement. "Nothing in [Howard] is to the contrary." Pittsburgh Plate Glass, 404 U.S. at 181 n.20. The APFA's decision to subordinate the seniority of the Reno flight attendants was a bona fide economic decision made to protect the interests of the American flight attendants, for whom the APFA did have the statutory duty to fairly represent.
 
 V.
 
 19
 When the American and Reno workforces merged on August 31, 1999, the Reno flight attendants became part of the American bargaining unit. At that point, the APFA had the duty to fairly represent the former Reno flight attendants. See Bernard, 873 F.2d at 218 (holding that duty of fair representation attaches when workforces merge). The Reno flight attendants contend that the APFA breached its post-merger duty to fairly represent them by implementing the seniority agreement. We hold that the APFA did not breach its post-merger duty to fairly represent the Reno flight attendants by implementing an agreement finalized before the APFA had the statutory duty to represent them.
 
 
 20
 Reno flight attendants cite only Gvozdenovic v. United Airlines, Inc., 933 F.2d 1100 (2d Cir. 1991), to support their argument. In Gvozdenovic, United Airlines ("United") announced its intention to acquire Pan American World Airways. Id. at 1103. The union representing United flight attendants began negotiating a seniority integration agreement with United while the merger was pending. Id. The agreement was not ratified by the union, however, until after the merger was complete. Id. The court held that the statute of limitation for a breach of the duty of fair representation claim began to run when the agreement was ratified. Id. at 1106. Gvodenovic is inapposite. Unlike in Gvozdenovic, American and the APFA finalized the seniority agreement before the Reno flight attendants became part of the APFA bargaining unit.
 
 
 21
 One NLRB decision is directly on point. In Riser Foods, Inc., 309 N.L.R.B. 635 (1992), Riser Foods ("Riser") and Rino-Rego Warehouse ("R&R") consolidated their warehouse operations. Id. at 635. Before the warehouses were operationally merged, the union representing Riser employees stated its opposition to Riser's plan to dovetail the seniority of R&R employees, i.e., to integrate them into the Riser seniority list according to their seniority at R&R. Id. at 636. After the merger occurred and Riser dovetailed the seniority list, the union threatened a work slowdown unless the former R&R employees were endtailed, i.e., placed at the bottom of the seniority list. Id. at 635. The former R&R employees argued that this demand violated the union's duty to fairly represent them. Id. Rejecting the grievance, the NLRB held that a union's duty of fair representation to new employees is not implicated where a union implements a position that it adopted before the new employees became members in the union's statutory bargaining unit. Id. at 636.
 
 
 22
 We agree with the reasoning of Riser Foods. The APFA reached the seniority agreement with American when it was statutorily obligated to represent only the interests of American flight attendants. Adopting the Reno flight attendants' reasoning would force unions to protect the interests of any person who might become a bargaining unit member to the detriment of current bargaining unit members. Such a duty would contravene the union's statutory duty to protect the interests of its own bargaining unit members. The APFA's implementation of the seniority agreement reached before the merger did not violate its post-merger duty to fairly represent the Reno flight attendants.
 
 VI.
 
 23
 The APFA was not the Reno flight attendants' exclusive bargaining representative when the seniority agreement was negotiated. It did not have the statutory authority to represent the flight attendants. The Reno flight attendants did not cede their bargaining rights to the APFA, so the duty of fair representation does not protect them from arbitrary conduct by the APFA. The RLA requires the APFA to protect the interests of the employees within its bargaining unit. Had the APFA not sought to preserve the seniority of its bargaining unit members to the detriment of those outside the bargaining unit, it would have been remiss in its statutory duty. Before the merger, the statutory authority to represent the Reno flight attendants was vested with the Teamsters, which could have negotiated with Reno for terms favorable to the Reno flight attendants upon merger. Appellants must seek redress under the RLA, if at all, from the union to which they have ceded their bargaining rights, the Teamsters.
 
 
 24
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The National Mediation Board ("NMB") has exclusive jurisdiction to determine union representation disputes under the RLA; an NMB representation determination is essentially unreviewable in federal court. Switchmen's Union v. NMB, 320 U.S. 297, 303-07 (1943) (holding that Congress intended for NMB determinations of union representation to be final and not subject to judicial review, and declining to review an NMB determination); see also Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc., 656 F.2d 16, 22 (2d Cir. 1981) ("[T]he NMB is empowered to . . . decide representation disputes arising out of corporate restructurings.").