The SECRETARY OF the TREASURY OF PUERTO RICO, Respondent, Appellant,

v.

ESSO STANDARD OIL CO., (P. R.) et al., Plaintiffs, Appellees.

No. 6101.

United States Court of Appeals First Circuit.

Heard Feb. 3, 1964.

Decided June 4, 1964.

Irene Curbelo, Asst. Sol. Gen., with whom J. B. Fernandez Badillo and Carlota Capo, Asst. Sol. Gen., were on brief, for appellant.

William Estrella, San Juan, P. R., with whom James R. Beverley, R. Castro Fernandez, Fernando Ruiz Suria, and Sifre & Ruiz Suria, San Juan, P. R., were on brief, for appellees.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

These are consolidated appeals in similar cases from judgments of the Supreme Court of Puerto Rico reversing judgments of the Superior Court of Puerto Rico, San Juan Part, and entering other judgments sustaining complaints for reimbursement of certain taxes imposed by the Secretary of the Treasury of Puerto

* Sitting by designation.

Rico.[1] Perhaps the appeals might be disposed of by simply remanding for reversal on the judgment of the Supreme Court of Puerto Rico entered pursuant to that court's opinion on reconsideration in a pilot case. Puerto Rico Drydock and Marine Terminals, Inc., v. Secretary of the Treasury of Puerto Rico, dated June 22, 1962, but not yet reported in English. However, we think it appropriate to comment as a federal court on the bearing of the so-called "Military Leasing Act of 1947," 61 Stat. 774, with particular reference to § 6 quoted insofar as pertinent in the margin.[2]

In 1942 the United States in the exercise of its power of eminent domain took from private owners some 180 acres of land in the Municipalities of Catano and Guaynabo for military purposes. The Government constructed facilities for the bulk storage and handling of liquid fuel on the land and in 1947 leased the premises under the Military Leasing Act of 1947 to the oil companies who are the appellees herein.[3] Beginning apparently with the taxable year 1951–1952 the insular authorities assessed general ad valorem taxes on the lessees' inventories of stock and materials, office equipment, pumps, light equipment, cash on hand, etc., located on the premises but not included in their leases. The property taxed was owned exclusively by the oil companies, was in their exclusive possession and control and was being used by them on the premises in their business of storing, distributing and selling gasoline and oil.

The lessees paid the taxes assessed against them and brought suits in the Superior Court of Puerto Rico for reimbursement. That court in 1957 dismissed the complaints, but on appeal the Supreme Court of Puerto Rico on May 17, 1961, entered judgments based on its first opinion in the Puerto Rico Drydock case, 82 P.R.R. 636 (1961), reversing the judgments of the Superior Court and entering judgments sustaining the complaints and ordering reimbursement to the plaintiffs of the taxes they had paid, with interest. After the Secretary of the Treasury had appealed to this court from the above judgments, the Supreme Court of Puerto Rico reversed itself on reconsideration in the Puerto Rico Drydock case and in that case entered final judgment on June 22, 1962, dismissing the complaint.[4] This judgment undercut the judgments entered in the cases before us, but nevertheless left these judgments in favor of the oil companies standing since they had been appealed.

The Supreme Court of Puerto Rico in its original opinion in the Puerto Rico Drydock case held that § 6 of the Military Leasing Act of 1947, supra, did not apply to the taxpayer's interest in "personal property belonging exclusively to lessee, not acquired by virtue of any obligation imposed upon it by the lease contract, and shall not belong to the United States upon expiration of the lease" because such interest "has not been made or created pursuant to the provisions of the Military Leasing Act." Puerto Rico Drydock & Marine Terminals, Inc., v. Secretary of the Treasury of Puerto Rico, 82 P.R.R. 636, 649 (1961). Then reviewing local law the court held that the leases by the United States of the land on which the property taxed was located did not constitute "alienations" and hence did not return jurisdiction over it to Puerto Rico. Wherefore the court concluded that under

1. The appeals were taken prior to the effective date of Public Law 87–189 terminating this court's appellate jurisdiction over the Supreme Court of Puerto Rico. 75 Stat. 417 (1961).

2. "The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation." This section has been codified, without substantive change in meaning intended, in Title 10 U.S.C. § 2667(e) as: "The interest of a lessee of property leased under this section may be taxed by State or local governments."

3. One of the appellees is a sub-lessee from a lessee from the United States.

4. This judgment having been entered subsequent to the effective date of Public Law 87–189, supra, footnote 1, is not appealable to this court.

local law Puerto Rico had no jurisdiction to tax the property of a lessee located on the leased land. On reconsideration the court adhered to its view that the Military Leasing Act of 1947 was inapplicable, but it reversed itself as to its ruling on the local law holding that leasing by the United States did constitute an "alienation" of the land which returned it to Puerto Rican jurisdiction. We think the Supreme Court of Puerto Rico read the Military Leasing Act of 1947 too literally.

Offutt Housing Co. v. Sarpy County, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956), is not in point on its facts. Furthermore in that case the Court was concerned with the interrelationship of the Military Leasing Act of 1947 with the Wherry Military Housing Act of 1949 which does not concern us here. However, we think the language used by the Court in that case indicates the result to be reached in this case insofar as the Military Leasing Act of 1947 is concerned.

In Offutt, at page 260 of 351 U.S., at page 819 of 76 S.Ct., the Court said that the Military Leasing Act of 1947 was an instance in which "Congress has seen fit not to express itself unequivocally" but has "preferred to use general language." Wherefore the Court said that in applying the general statutory language to specific problems courts "must resort to whatever aids to interpretation the legislation in its entirety and its history provide." And at the top of the page the Court said that the Act's legislative history "indicates a concern about loss of revenue to the States and a desire to prevent unfairness toward competitors of the private interests that might otherwise escape taxation."

 Read literally Congress in § 6, supra, in the exercise of its constitutional power of "exclusive Legislation" with respect to "all Places" purchased by the United States [5] permitted state and local taxation of the lessee's interest only to the extent that such interest has been made or created pursuant to the provisions of the Act. However, § 6 being equivocal in its language, we are not bound to interpret it literally. Resorting to its legislative history as stated in the Offutt case as an aid to the section's meaning, it seems to us evident that Congress, to effectuate its purpose, must have intended also to permit state and local taxation of the interest of the owner of property brought onto land leased under the Act. Otherwise, if a lessee could move its property on to leased land and escape imposition of state and local taxation, the concern of Congress about loss of state and local revenue and its desire to prevent unfairness to competitors of lessees from the United States would be frustrated.

Judgments will be entered reversing the judgments of the Supreme Court of Puerto Rico and remanding the cases to that court for the entry of appropriate judgments consistent with that court's judgment of June 22, 1962, in Puerto Rico Drydock and Marine Terminals, Inc., v. Secretary of the Treasury of Puerto Rico.