**Benita Sanchez Vda. DE COSME, et al., Plaintiffs,**

v.

**SEA CONTAINERS, LTD., et al., Defendants.**

**Fausto Soriano FARDONK, et al., Plaintiffs,**

v.

**SEA CONTAINERS, LTD., et al., Defendants and Third-Party Plaintiffs,**

v.

**MARITIMA DEL CARIBE, INC., Third-Party Defendant.**

Nos. 77–0561(RLA), 78–2394(RLA).

United States District Court, D. Puerto Rico.

Oct. 3, 1984.

Gustavo A. Gelpí, Feldstein, Gelpí & Hernández, San Juan, P.R., Calixto Juval Rivera, Rio Piedras, P.R., for plaintiffs.

J. Ramón Rivera-Morales, José Antonio Fusté, Jiménez & Fusté, Charles A. Cordero, Cordero & Colón, San Juan, P.R., Luis Sánchez-Betances, Cepeda & Sánchez-Betances, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

On March 21, 1977, three longshoremen were injured as a result of an accident which occurred while the motor vessel "Hustler Cheyenne" was being unloaded at Pier 15 in San Juan, Puerto Rico. One of the stevedores eventually died from his injuries. Subsequently, the above-captioned consolidated actions were filed.[1] The de-

---

**1.** Civil Action No. 77–0561 commenced on April 14, 1977. Civil Action No. 78–2394 commenced on November 30, 1978.

fendants and third-party plaintiffs are the owners of the vessel, Sea Containers, Ltd. (Sea Containers); its protection and indemnity insurer, The London Steamship Owners Mutual Insurance Association, Ltd. (London); the employer of the longshoremen, Maritima del Caribe, Inc. (Maritima); the owner of the crane involved in the accident, R. Mediavilla & Sons, Inc.; the manufacturer of the crane, Manitowoc Engineering Corp.; and an inspector of the crane, Antonio Vélez.

On March 21, 1980 defendants Sea Containers and London filed a motion for summary judgment on the grounds that the complaint failed to state a claim for which relief may be granted as to them. It was submitted that Sea Containers was entitled to the "statutory employer" immunity of the Puerto Rico Workmen's Accident Compensation Act (PRWACA), 11 L.P.R.A. §§ 1–42, specifically §§ 19 and 21. In addition, it was averred that since no cause of action lies against its insured, codefendant London was also entitled to a dismissal.

The motion was opposed on grounds that Maritima was not an insured employer under PRWACA at the time of the accident because it had failed to pay the insurance premiums. As a result of this dispute, administrative proceedings were brought before the State Insurance Fund and the Puerto Rico Industrial Commission. A final decision was issued by the Industrial Commission on June 28, 1983, finding the employer Maritima to be covered under PRWACA.

Thereafter, defendants Sea Containers and London renewed their motion for summary judgment based on the statutory employer defense.

Plaintiffs again opposed the motion, with an argument not heretofore presented. The thrust of plaintiffs' new contention is that the laws of the Commonwealth of Puerto Rico, specifically PRWACA, do not apply to the area where the accident occurred. They aver that Pier 15 forms part of the United States naval drydock and repair facility, which is reserved for public purposes. As such, plaintiffs argue it is subject to the Federal General Maritime Law and partial summary judgment should be entered to this effect.

### LAW APPLICABLE TO PIER 15

Plaintiffs' primary claim is that Pier 15 is a federal enclave where only federal law may be applied to the exclusion of all local laws. Underlying plaintiffs' argument is the fact that the land in question was acquired from the Government of Puerto Rico through Law 77 of May 1, 1941.[2]

Defendants aver that although the United States may be the owner of the property where the accident occurred, plaintiffs have failed to prove that the United States has exclusive jurisdiction over the property. It is their position that under the express language of 40 U.S.C. § 255[3] when the United States fails to make a formal acceptance of exclusive jurisdiction "it shall be conclusively presumed that no such jurisdiction has been accepted." *Id. See, United States v. Gliatta,* 580 F.2d 156, 158 (5th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 708 (1978).

---

**2.** Laws of Puerto Rico (1941), pp. 670 and 672.

**3.** 40 U.S.C. § 255 states in pertinent part:
Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.

Plaintiffs advance two arguments against this theory: that Section 255 is not applicable because Puerto Rico is not a State; and that the United States has exclusive jurisdiction under Section 5 of the February 16, 1903 Act of the Legislature of Puerto Rico.

Defendants contend that even if the area in question were a federal enclave where federal law applies exclusively, jurisdiction reverted to Puerto Rico through the "proviso" clause of Section 5 of the February 16, 1903 Act.[4]

The land object of this dispute was acquired by the United States from the Government of Puerto Rico pursuant to Law 77 of May 1, 1941, which reads as follows:

Section 1.—The Governor and the Commissioner of the Interior of Puerto Rico are hereby authorized to sell, in the name and in representation of The People of Puerto Rico, to the Government of the United States of America, for national-defense purposes, the graving dock constructed pursuant to Act No. 29, approved April 18, 1936, as amended by Act No. 2, approved June 29, 1936, and Act No. 7, approved September 2, 1938; *Provided,* That the selling price shall not be less than the total cost incurred by The People of Puerto Rico in the construction of said work; *And provided, further,* That the proceeds of the sale authorized by this Act shall be set aside by the Treasurer of Puerto Rico and be covered into a special fund devoted to pay any debt of The People of Puerto Rico for the construction of said work.

Section 2.—In order to carry out the purposes of this Act, the Governor and the Commissioner of the Interior of Puerto Rico are further authorized to enter, in the name of The People of Puerto Rico, into such negotiations with the Government of the United States of America as may be necessary, and to execute the corresponding deed or deeds of conveyance.

Section 3.—All laws or parts of laws in conflict herewith are hereby repealed.

Section 4.—It is hereby declared that an emergency exists which makes necessary the immediate taking effect of this Act, and it shall therefore take effect immediately upon its approval.

Law 77 is silent as to the type of jurisdiction transferred. Therefore, to determine the applicability of the United States' statutes within Pier 15, we have to refer to Section 5 of the February 16, 1903 Act of the Legislature of Puerto Rico (*supra* at n. 5), which was the law in force at the time of the transfer.[5] This section conferred exclusive federal jurisdiction to property acquired by the United States Government for "naval, military or other purposes" provided that the federal government did not alienate any land so acquired. In case of alienation, the jurisdiction would revert to Puerto Rico.

In *Puerto Rico Drydock v. Secretary of the Treasury,* 85 P.R.R. 707 (1962),[6] the Supreme Court of Puerto Rico made an analysis of the term "alienation" within the context of Law 77.[7] The Court concluded that since the Act was originally drawn-up in English, the interpretation of the term "alienation" should prevail over the mean-

---

4. Laws of Puerto Rico (1903), p. 110:
   Section 5.—That consent be and is hereby given to the United States to acquire for naval, military or other public purposes, by purchase or condemnation any lands within the island of Porto Rico, and when so acquired and possession thereof shall have been taken by the United States, all jurisdiction over such lands by The People of Porto Rico shall cease and determine; *Provided however, that upon the subsequent alienation by the United States of any land so acquired The People of Porto Rico shall again have jurisdiction thereover.* (Emphasis added.)

5. Section 5 of the February 16, 1903 Act was repealed on June 10, 1955 by Law No. 63 and replaced by Law No. 62, 28 L.P.R.A. §§ 54–57.

6. Accord, *Secretary of the Treasury of Puerto Rico v. Esso Standard Oil Co.,* 332 F.2d 624 (1st Cir.1964).

7. Although plaintiff claims this case applies exclusively to tax law, we do not read it in such a restrictive vein.

ing of the Spanish translation "enajena-ción". *Id.* at 710. The Court stated that in its broadest sense the term "alienation" is identified with the possession and control over the property itself, and further "that in a leasehold it is the lessee who has this control and possession." *Id.* at 711.

The record shows that before Sea Train leased the pier, it had been utilized by Gulf-Puerto Rico Lines and Alcoa Steamship Company.[8] In 1969, the federal government issued the Puerto Rico Ports Authority (PRPA) a license for non-federal use of the land in question,[9] as a commercial shipping terminal. The PRPA in turn leased the premises under preferential use contract to Gulf-Puerto Rico Lines.

At the time of the accident object of this action, the land in question was leased to Puerto Rico Drydock and Marine Terminals, Inc. pursuant to 10 U.S.C. §§ 2662 and 2667. This statute authorizes the secretary of a military department to lease property which is not for the time needed for public use. This being so, it cannot be said that the Pier 15 area was occupied or being used by the United States for military or naval purposes during 1977.

It is evident that this facility was being used instead for commercial ends and not for the purpose for which it was acquired, in accordance with the spirit of the February 16, 1903 Act.

It is interesting to note that Law 62 of 1955, 28 L.P.R.A. § 57, which superseded the 1903 Act, was drafted in terms of the "use" of the land for purposes of jurisdiction.[10]

Given the fact that the federal government had "alienated" the property in question to the extent of having, at one time, entrusted a supervisory role to the local agency directly in charge of all such activity within the Commonwealth of Puerto Rico, it is difficult to accept the argument that Pier 15 was a federal enclave or that the federal government considered it as such. We believe that by its own acts, the Government of the United States had "alienated" the land in question to the point where the jurisdiction over said parcel had reverted to the Commonwealth of Puerto Rico at the time the accident occurred. Without a stronger showing that federal law was exclusive in this property, we are reluctant to go so far. Having resolved this issue, we need not go into the parties' other arguments.

In concluding that the injured longshoremen have no cause of action against the ship-owner, it being an immune statutory employer under PRWACA, we must necessarily rule that there is no cause of action against the ship-owner's insurer. *Ruiz Rodríguez v. Litton Industries Leasing Corp.*, 574 F.2d 44 (1st Cir.1978).

Based on the foregoing, defendants' motion for summary judgment is granted and the amended complaint is hereby dismissed against defendants Sea Containers, Ltd. and The London Steamship Owners Mutual Insurance Association, Ltd.

Given the conclusions reached herein, plaintiffs and third-party defendant Maritima del Caribe, Inc. are granted a term of fifteen (15) days to show cause why the complaint should not be dismissed against the third-party defendant.

IT IS SO ORDERED.

---

8. In the federal blueprints and other documents presented as exhibits by defendants, the area in question is referred to as the "Alcoa Pier".

9. License NF(R)6382.

10. 28 L.P.R.A. § 57, pertaining to lands over which the United States has acquired jurisdiction:

The jurisdiction granted shall continue only while the United States is the proprietor or is in possession of the lands and the lands are used for the naval, military, or other public purposes for which they were acquired. In the event that the United States ceases to be the proprietor of the lands or to be in possession of same, or in the event that they are not *used* for the purposes for which they were acquired, the Commonwealth of Puerto Rico shall again have jurisdiction over same. (Emphasis added.)